UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **RICHARD G. JUNKINS,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 5:17-cv-00350-MHH |
| **DANIEL DEJONG, et al.,** | } |
| **Defendants.** | } |

# **MEMORANDUM OPINION**

This § 1983 action is before the Court on Officer Daniel Dejong's motion to dismiss. (Doc. 35). Officer Dejong shot and killed plaintiff Richard Junkins's dog, Mr. Bear, and then arrested Mr. Junkins for obstructing traffic. Mr. Junkins sued Officer Dejong and four other defendants, asserting eight claims under state and federal law. (Doc. 31). Mr. Junkins now concedes that his claims against every defendant other than Officer Dejong, his claims against Officer Dejong in his official capacity, and his claim for malicious prosecution should be dismissed. (Doc. 48, p. 2). This opinion addresses Mr. Junkins's remaining claims against Officer Dejong. For purposes of this opinion, the Court accepts the well-pleaded facts in Mr. Junkins's amended complaint as true and draws all inferences in favor of Mr. Junkins. *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).

1

## I. Background

March 6, 2015 was a tragic day for Mr. Junkins and his wife. That morning, the family's mobile home caught fire and burned completely. (Doc. 31, ¶¶ 6–7). Mr. Junkins and his wife lost everything except their dog, Mr. Bear. (Doc. 31, ¶ 7). Mr. Junkins and his wife went to the Red Cross, where they received blankets and funds to buy food. (Doc. 31, ¶¶ 9–10). When they returned to their burned home, they discovered that water the fire department used to douse the home had flooded the yard, making it muddy. (Doc. 31, ¶ 11). Mr. Junkins's truck became stuck in the mud. He tried to free his truck from the mud and became distraught when he could not. (Doc. 31, ¶ 11).

Around 10 or 11 p.m., Mr. Junkins and Mr. Bear noticed a car's headlights coming down the road, which was "unusual at that hour of the night." (Doc. 31, ¶ 12). Mr. Bear took off after the car, and Mr. Junkins chased after the dog, "waving his arms to get the attention of the driver to prevent Mr. Bear from getting struck by the vehicle." (Doc. 31, ¶ 12). The car drove off, and Mr. Junkins, out of breath, sat down on the curb by the mailbox. (Doc. 31, ¶ 14). He "looked at his home still smoldering and his truck that was stuck and just became overwhelmed again." (Doc. 31, ¶ 13). Mr. Junkins then saw the vehicle turn around and head back towards

him, so he "stood up and began walking back to his house and told the driver to, 'go on.'" (Doc. 31, ¶ 15).

Officer Dejong arrived and walked up the driveway, shining his flashlight on Mr. Junkins. (Doc. 31, ¶ 16). Mr. Junkins came towards Officer Dejong, and was approximately twelve to fifteen feet from him, when Officer Dejong turned the flashlight on Mr. Bear. Mr. Bear was lying beside the burned home. (Doc. 31, ¶ 17). Mr. Bear barked twice but did not move towards Officer Dejong. (Doc. 31, ¶ 18). Officer Dejong, "who already had his gun pulled and in front of him," fired two shots and killed Mr. Bear. (Doc. 31, ¶ 18). Mr. Junkins "became so overcome with emotion that he passed out." (Doc. 31, ¶ 19).

Officer Dejong arrested Mr. Junkins and charged him with obstructing vehicular or pedestrian traffic under Alabama Code § 13A-11-7(5). (Doc. 31, ¶ 20). In his incident report, Officer Dejong reported that Mr. Junkins was extremely intoxicated. (Doc. 31, ¶ 23). During Mr. Junkins's criminal trial, Officer Dejong acknowledged that he did not have a conversation with Mr. Junkins, did not observe Mr. Junkins with any type of alcoholic beverage, and did not see alcoholic containers lying around. (Doc. 31, ¶ 24). Mr. Junkins denies that he was intoxicated. (Doc. 31, ¶ 23). A jury acquitted Mr. Junkins of the criminal charge. (Doc. 31, ¶ 20).

**II.   Analysis**

Pursuant to 42 U.S.C. § 1983, Mr. Junkins asserts claims against Officer Dejong for false arrest and excessive force. Officer Dejong's defense rests on the doctrine of qualified immunity, an affirmative defense that "protects police officers from suit in their individual capacities for discretionary actions performed in the course of their duties." *Carter v. Butts County*, 821 F.3d 1310, 1318 (11th Cir. 2016). The availability of the affirmative defense is a "question of law for the court to determine." *Stone v. Peacock*, 968 F.2d 1163, 1165 (11th Cir. 1992) (quoting *Ansley v. Heinrich*, 925 F.2d 1339, 1341 (11th Cir. 1991)) (internal quotation marks omitted).

Qualified immunity allows police officers "'to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Qualified immunity 'does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Carter*, 821 F.3d at 1319 (quoting *Holmes v. Kucynda,* 321 F.3d 1069, 1077 (11th Cir. 2003), in turn quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982)) (alteration provided by *Holmes*).

An officer asserting entitlement to qualified immunity "must first prove that he was acting within the scope of his discretionary authority." *Lee*, 284 F.3d at 1194 (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)) (internal quotation marks omitted). If the officer establishes that his actions were within the scope of his discretionary authority, then the burden shifts to the plaintiff to establish that the officer violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Carter*, 821 F.3d at 1319; *Lee*, 284 F.3d at 1194. A right is clearly established if its contours are so clear that a reasonable officer would know that what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). An officer is not entitled to qualified immunity for discretionary conduct that violates a plaintiff's constitutional rights if the right at issue was clearly established when the constitutional violation occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Loftus v. Clark-Moore*, 790 F.3d 1200, 1204 (11th Cir. 2012).

It is undisputed that Officer Dejong was performing a discretionary function when he encountered Mr. Junkins; in his role as a law enforcement officer, Officer Dejong was investigating a potential disturbance. *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Mr. Junkins's § 1983 claims for false arrest and

excessive force concern the Fourth Amendment.[1] The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. An arrest is a "seizure of the person" and must be reasonable, or else it violates the Fourth Amendment. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).

A warrantless arrest without probable cause violates the Fourth Amendment and may serve as the basis for a § 1983 claim. *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018). "But where probable cause supports an arrest," probable cause "acts 'as an absolute bar to a section 1983 action for false arrest.'" *Carter*, 821 F.3d at 1319 (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). Probable cause exists where the totality of the circumstances of which the arresting officer was aware at the time of arrest "would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense." *Carter*, 821 F.3d at 1319 (quoting *Kingsland* 382 F.3d at 1226) (internal quotation marks omitted). Because "'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is

---

[1] Mr. Junkins argues that because the arrest was "unnecessary and baseless, it follows that the force used to effect the arrest was also unreasonable and excessive." (Doc. 48, pp. 7–8). Because Mr. Junkins's excessive force claim is derived from the false arrest claim, and Mr. Junkins offers no evidence to support an independent excessive force claim, his excessive force claim is subsumed in the false arrest claim. *See Bashit v. Rockdale Cty.*, 445 F.3d 1323, 1331 (11th Cir. 2006). For the purposes of a qualified immunity analysis, the Court evaluates Mr. Junkins's Fourth Amendment theories under the false arrest rubric.

6

present,'" an officer will receive the protection of qualified immunity if he can demonstrate that he had arguable probable cause to make an arrest. *Carter*, 821 F.3d at 1319–20 (quoting *Anderson*, 483 U.S. at 641).

Arguable probable cause exists when reasonable officers in the same circumstances, having the same knowledge as the arresting officer, would believe that probable cause existed. *Brown*, 608 F.3d at 734-35.

> To determine whether an officer had arguable probable cause, we ask "'whether the officer's actions are objectively reasonable ... regardless of the officer's underlying intent or motivation.'" *Lee,* 284 F.3d at 1195 (quoting *Vaughan v. Cox,* 264 F.3d 1027, 1036 (11th Cir. 2001)). This standard does not shield officers who unreasonably conclude that probable cause exists. *Skop,* 485 F.3d at 1137.

*Carter*, 821 F.3d at 1320. "Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures." *Carter*, 821 F.3d at 1320 (citing *Case v. Eslinger,* 555 F.3d 1317, 1327 (11th Cir. 2009)). A determination of arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735.

Officer Dejong arrested Mr. Junkins for obstructing vehicular or pedestrian traffic under Alabama Code § 13A-11-7(5). (Doc. 31, ¶ 20). Citing *Devenpeck v. Alford*, 543 U.S. 146 (2004), and *Lee*, Officer Dejong argues that he "is entitled to qualified immunity if he had probable cause or arguable probable cause to arrest Junkins for any offense." (Doc. 35, p. 9). Officer Dejong is correct; so long as he

7

had arguable cause to arrest for any offense, qualified immunity will apply. *Brown*, 608 F. 3d at 735.

Officer Dejong contends that he "had probable cause or at least arguable probable cause to arrest Junkins for the offense of public intoxication" under Alabama Code § 13A-11-10. (Doc. 35, p. 9). Under Alabama Code § 13A-11-10(2), "[a] person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." "[T]he offense of public intoxication requires something more than 'mere drunkenness.'" *Martin v. Anderson*, 107 F. Supp. 2d 1342, 1354 (M.D. Ala. 1999) (quoting *Congo v. State*, 409 So. 2d 275, 277 (Ala. Crim. App. 1981)). The suspect must appear in a public place, and he must present some danger to himself, others, or property. *See Cagle v. State*, 457 So. 2d 463, 465 (Ala. Crim. App. 1984) ("The Commentary to the corresponding model code provision states that '[i]t is not the state of incapacitation *per se* that is condemned, but only its public manifestations in ways that may endanger the actor or inconvenience others.'").

Officer Dejong argues that he had sufficient cause to arrest Mr. Junkins for public intoxication because he (Officer Dejong) "was confronted with an erratically and bizarrely acting Junkins who passed out in front of him for no apparent reason."

(Doc. 35, pp. 11–12); *see also* (Doc. 49, p. 10) ("The bizarre conduct on the part of Junkins clearly qualified as reasonably objective evidence that Junkins was so impaired that he possibly constituted a danger to himself."). Mr. Junkins's amended complaint indicates that when Officer Dejong arrived at Mr. Junkins's property some time after 10:00 p.m., it was dark. It is reasonable to infer that it was dark because of the hour and because Officer Dejong was using his flashlight to see as he walked to the spot where Mr. Junkins stood in his driveway. (Doc. 31, ¶ 16). It is reasonable to infer that there was no light coming from Mr. Junkins's house because Mr. Junkins's house had burned to the ground earlier in the day, destroying the contents of the house. (Doc. 31, ¶ 7). The dark surroundings would make it difficult for a reasonable officer to see evidence of intoxication.

The only evidence of intoxication that Officer Dejong identifies is Mr. Junkins's loss of consciousness. The amended complaint indicates that Mr. Junkins passed out after Officer Dejong fired his gun twice on Mr. Junkins's property, killing Mr. Junkins's dog, Mr. Bear, as the dog "[laid] beside the area that used to be the door of the home." (Doc. 31, ¶¶ 17–18). No reasonable officer, knowing that he had just entered a citizen's property, stood 12 to 15 feet from the citizen, and shot the citizen's dog dead on the citizen's property, would conclude that the citizen's loss of consciousness was the result of intoxication. (Doc. 31, ¶¶ 17–19). A reasonable officer in the same circumstances with the same knowledge likely would

conclude that Mr. Junkins passed out because he witnessed his dog being killed beside (it would be reasonable to infer) his still-smoldering house. The Court rejects Officer Dejong's contention that a reasonable officer would conclude that Mr. Junkins passed out for "no apparent reason." Drawing reasonable inferences in favor of Mr. Junkins, a reasonable officer could not conclude solely because a man collapsed at night after a shooting on his property that the man must be intoxicated. On an evidentiary record, the Court may reach a different conclusion, but at this stage of the litigation, viewing the allegations in the amended complaint in the light most favorable to Mr. Junkins, Mr. Junkins has demonstrated that Officer Dejong lacked arguable probable cause to arrest him for public intoxication.[2] Thus, Mr. Junkins's Fourth Amendment claim survives Officer Dejong's motion to dismiss.

Though Mr. Junkins does not explicitly concede his state law claims against Officer Dejong in his individual capacity, the Court will dismiss those claims. Officer Dejong is a deputy of the Madison County Sheriff's Department. (Doc. 31, ¶ 5). Under Article I, Section 14 of the Alabama Constitution, sheriff's deputies share in the sovereign immunity that protects sheriffs from actions against them in their individual capacity for acts performed in the course and scope of their employment. *Suttles v. Roy*, 75 So.3d 90, 94 (Ala. 2010); *see also Ex parte Shelley*,

---

[2] The Court leaves for another day the question of whether Mr. Junkins, while standing in his driveway, was in a public place and whether, when he passed out, he was a danger to himself or others. *See State v. Phillips*, 517 So.2d 648, 651 (Ala. Crim. App. 1987).

53 So.3d 887, 891 (Ala. 2009) (expanding immunity to deputy sheriffs). The Court has previously dismissed the Madison County Sheriff's Office as a defendant. (Doc. 42).

## III. Conclusion

The Court dismisses all of the claims in this action other than Mr. Junkins's § 1983 claim for false arrest against Officer Dejong in his individual capacity. Within 14 days, Mr. Junkins and Officer Dejong shall propose discovery deadlines for this case.

**DONE** and **ORDERED** this March 6, 202020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE